Day, C. J.
The controverted point in the case is, whether the railroad company performed the conditions of the agreement between the original parties. Three things were to be done by the company: 1. It was to locate its xoad upon the right of way described; 2. It was to occupy the ground in question “ for the west part of the depot ;and a part of the usual buildings erected thereon; ” 3. It was to give the grantor the usual facilities for connecting his lots with the road.
There is no dispute but that the first and third conditions have been performed. The controversy relates to the second. This condition is in the nature of a condition subsequent; for it contemplates an immediate interest in .and possession of the land, and the subsequent erection of the buildings thereon. The company can not in equity be •divested of this interest in the land and its improvements thereon, if it has complied with the exact requirements of the agreement. We must, then, determine the meaning of the language used in the condition in controversy. The ground was to “be occupied for the -west part of the depot .and a part of the usual buildings erected thereon.” The .ground, it is to be noticed, was to be occupied for “ part ” •only of the depot and buildings of that station. The word “ depot” is not used here to mean a buildiDg; for a street intervened to prevent a union of the “west part” of a building with an eastern part thereof. Besides, part of the usual buildings were to be erected “ thereon.” Clearly, the words, “ the depot,” mean the entire grounds used by the company for its business purposes with the public at that station. The land in controversy was to be the “ west part ” of the depot-grounds, and a part of the usual depotibuildings were to be erected thereon. What particular *230 kind of tbe usual buildings were to be erected is not specified. Tbat is left to the discretion of tbe company. Tbe agreement contemplates tbat tbe depot grounds and buildings at tbat station were to be in two parts. Though it was doubtless supposed tbat tbe two parts would be separated only by a street, still it is to be observed tbat no-allusion is made in tbe agreement as to tbe location of the eastern part of tbe depot grounds or buildings tbereon. It is, however, clearly implied tbat they are to be part of tbe depot grounds and buildings at tbe same station. Further than this, their location, whether near or remote,, does not strictly affect this agreement.
Since, then, tbe eastern part of tbe depot grounds and buildings are located at tbe same town and substantially at tbe same station, it only remains to consider whether tbe land in question is occupied for tbe western part of the depot-grounds, and whether part of tbe usual depot-buildings are erected tbereon. Indisputably, tfie company took possession of tbe land, and used it for depot purposes. At first, its chief business with tbe public was transacted there. Tbe company caused a building to be erected tbereon, which, though built by other parties, was to be for tbe accommodation of tbe public in its business with tbe road, and is kept subject to tbe control of tbe company. Moreover, the. company has constructed on tbe ground facilities for the-loading and unloading of live stock, lumber, and coal. Tbe transportation of cattle, grain, lumber, and coal form no inconsiderable part of tbe business of railroads, and: depot facilities for freights of these classes are as necessary as they are for any other freights, and are required to be-of a special character suited to tbe business. Here, then, is a depot for tbat class of business, with tbe usual building and structures required for tbat purpose. Strictly considered, then, tbe conditions of tbe agreement have been fulfilled. Tbe land is occupied for tbe west part of tbe depot-grounds, and a part of tbe usual buildings used for depot purposes have been erected tbereon. Tbe contract requires nothing more. If tbe ordinary passenger and *231 freight depot-building bad been located immediately on tbe east side of tbe street bounding tbe land in controversy, it would not have been doubted but that-it was the west part of tbe depot grounds, containing part of tbe usual buildings for conducting the railroad business of that station. Tbe doubt arises because tbe eastern part of tbe depot buildings are so far east of tbe western part. But tbe contract contemplates that tbe depot is to be in parts; and the location of tbe eastern part, so it is at tbe same station, is neither expressly nor impliedly provided for in tbe agreement. Eor aught that appears, this separation of tbe parts of tbe depot facilities is as convenient for tbe public, and as well subserves tbe interest of tbe plaintiffs below, as would a nearer location of tbe parts of tbe depot structures. Tbe long acquiescence of all parties in tbe present situation of tbe buildings and depot business tends to that conclusion.
Sufficient was done by tbe company to be regarded as a substantial compliance with tbe written conditions of tbe agreement. So long as it continues to comply therewith, it is entitled to the enjoyment of tbe premises. It follows that tbe decree of tbe court below, in favor of tbe defendants in error, was wrong.

Judgment reversed and cause remanded.

McIlvaine and Welch, J.J., concurred.
Stone and White, JJ., dissented.